UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WILLIAM HULIN                                    CIVIL ACTION

VERSUS                                              NO. 20-924

HUNTINGTON INGALLS, INC., ET                  SECTION "R" (3)
AL.

## ORDER AND REASONS

Defendants Huntington Ingalls Incorporated, Albert L. Bossier, Jr., and Lamorak Insurance Company (collectively the "Avondale Interests") move for summary judgment.[1] Certain Underwriters at Lloyd's, London, and London Market Companies (collectively "London Market Insurers") have joined in the Avondale Interests' motion.[2]  Because there is no genuine dispute as to any material fact, and because defendants are entitled to a judgment as a matter of law, the Court grants defendants' motion.

---

[1]      R. Doc. 39.
[2]      R. Doc. 57.

## I.   BACKGROUND

This case arises out of plaintiff William Hulin, Sr.'s asbestos exposure. Avondale employed Hulin from January 1954 to May 1973.[3]  He worked primarily at Avondale's "Main Yard."[4]  He worked as a shipfitter, and claims to have worked as a "laborer" and "tacker."[5]

Hulin alleges that he was exposed to asbestos numerous times in the course of his employment with Avondale.[6]  He states that he worked at the Main Yard's land-based insulation shop.[7]  His work there consisted of, among other things, "cutting asbestos insulation templates for later installation on vessels."[8]  He alleges that he breathed "asbestos dust on a regular basis," even when he was not personally handling insulation.[9]  Hulin claims to have "sustained regular, heavy and ongoing exposures to asbestos on land prior to 1972."[10]  In July 2019, Hulin was diagnosed with lung cancer.

---

[3]    R. Doc. 44-1 at 1, II ¶ 1 (Plaintiff's Statement of Contested Material Facts).

[4]    *Id.* at ¶ 2.

[5]    R. Doc. 44-2 at 1, ¶ 2 (Hulin Affidavit)

[6]    *Id.* at ¶ 3.

[7]    *Id.* at ¶ 4.

[8]    *Id.* at ¶ 5.

[9]    *Id.* at ¶¶ 6-7.

[10]   *Id.* at ¶ 3.

Plaintiff sued a number of defendants, including the Avondale Interests, in state court on November 12, 2019.[11]  The case was removed to this Court on March 17, 2020.[12]  Plaintiff has expressly disclaimed any strict liability claim against the Avondale Interests.[13]  Instead, he alleges negligence against the Avondale Interests under Louisiana law.[14]

## II.   LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or

---

[11]   R. Doc. 1-2 (Original Complaint).
[12]   R. Doc. 1.
[13]   R. Doc. 1-2 at 11, ¶ 50 (Original Complaint).
[14]   *Id.* at ¶¶ 38-50.

3

affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)). "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by

pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322 (emphasis added))).

## III.  DISCUSSION

The Avondale Interests and London Market Insurers argue that plaintiff's state-law negligence claims are preempted by the Longshore and Harbor Workers' Compensation Act ("LHWCA" or the "Act"), 33 U.S.C. § 901, *et seq.* Plaintiff argues that the LHWCA does not apply to his injuries and, even if it does, the LHWCA does not preempt his negligence claims.

Furthermore, Hulin argues that preemption would effectively deprive him of a vested property right, violating his constitutional right to due process.

## A.    Coverage Under the LHWCA

The LHWCA is a federal statutory workers' compensation statute providing covered maritime workers with "medical, disability, and survivor benefits for work-related injuries and death." *MMR Constructors, Inc. v. Dir., Office of Workers' Comp. Programs*, 954 F.3d 259, 262 (5th Cir. 2020) (citation and internal quotation marks omitted).  Before 1972, the statute covered only workers on "navigable waters of the United States (including any dry dock)." *Id.* (citing 33 U.S.C. § 903(a) (pre-1972)).  But, in 1972, Congress "extend[ed] the LHWCA landward." *Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 719 (1980).

### 1.    Applicable Version of the LHWCA

This case turns in large part upon whether the pre- or post-1972 version of the LHWCA applies.  Plaintiff argues that the pre-1972 version of the law applies and that his land-based asbestos exposures fall outside the Act's scope.[15]  Defendant contends that the post-1972 Act applies.[16]  In making the determination of the applicable version of the LHWCA,

---

[15]    R. Doc. 44 at 6.
[16]    R. Doc. 39-1 at 3-4.

defendant argues that a "date of manifestation" rule controls.[17]  Under this rule, the Court applies the Act as it existed when plaintiff's disease manifested to determine whether the alleged injuries are covered.  In response, plaintiff argues that a "date of exposure" rule applies and that the Court must analyze these claims under the pre-1972 LHWCA,[18] because he suffered asbestos exposure before the Act's amendments.[19]

Courts use the "date of injury" to determine which version of the LHWCA applies.  *Castorina v. Lykes Bros. S.S. Co.*, 758 F.2d 1025, 1029 (5th Cir. 1985).  In the context of long-latency diseases arising from asbestos exposure, the Fifth Circuit in *Castorina* held that manifestation, not exposure, determines the date of injury.  *Id.* at  1031.  There, plaintiff's disease, asbestosis, manifested in 1979.  *Id.* at 1028.  His exposures occurred between 1965 and 1972.  *Id.* at 1027.  The court looked to judicial authority stating that the LHWCA "is not concerned with pathology, but with industrial disability; and a disease is no disease until it manifests itself."  *Id.* (quoting *Grain Handling Co. v. Sweeney*, 102 F.2d 464 (2d Cir. 1939), *cert. denied*, 308 U.S. 570 (1939)).  It also inferred Congress's intent from Congress's express adoption of the manifestation rule in 1984.  *Id.* (citing

---

[17]     *Id.*
[18]     R. Doc. 44 at 6.
[19]     *Id.* at 3.

Pub.L. No. 98–426, § 28(g)(1), 98 Stat. 1639 (1984)).   In the 1984 amendments to the LHWCA, Congress provided a specific definition of "injury" for occupational diseases:

> [I]n the case of an occupational disease which does not immediately result in a disability or death, an injury shall be deemed to arise on the date on which the employee or claimant becomes aware, or in the exercise of reasonable diligence or by reason of medical advice should have been aware, of the disease . . . .

Pub.L. No. 98–426, § 28(g)(1), 98 Stat. 1639 (1984).  Under *Castorina* and the 1984 amendments, plaintiff's injury is deemed to arise on the date it manifested.  Because plaintiff's disease manifested in 2019, the Court applies the LHWCA as it existed in 2019, the date of plaintiff's injury.

Plaintiff disputes this legal conclusion by pointing to dicta in a footnote in *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 466 n.6 (5th Cir. 2016), in which the Fifth Circuit stated:

> Defendant's preemption defense is governed by the law *at the time [plaintiff] was exposed to asbestos*, which occurred before the Louisiana Worker's Compensation Act was amended in 1989 to eliminate any concurrent coverage between that Act and the federal Longshore and Harbor Workers' Compensation Act.  *See* La. Rev. Stat. 23:1035.2 (providing that "[n]o compensation shall be payable in respect to the disability or death of any employee covered by . . . the Longshoremen's and Harbor Worker's Compensation Act, or any of its extensions . . .").

*Id.* (emphasis added).[20]  The Court does not find that this footnote has the import plaintiff attributes to it.

In the *Savoie* opinion, the court makes clear that it is discussing the applicable version of *state law*.  For example, in the footnote upon which plaintiff relies, the Fifth Circuit noted that plaintiff's exposure "occurred before the Louisiana Worker's Compensation Act was amended in 1989 to eliminate any concurrent coverage between that Act and the federal Longshore and Harbor Workers' Compensation Act."  *Id.* (citing La. Rev. Stat. 23:1035.2).  If the court were not referring to the appropriate version of state law, there would have been no need to discuss the elimination of concurrent state-federal workers' compensation coverage.  The references to state law in the same footnote and throughout the opinion support the Court's conclusion that the Fifth Circuit was referring to the applicable state law, not which version of the LHWCA applies.  *See id.* at 464 ("[Wrongful death] claims are governed by the [state] law in effect at the time the decedent passes away," but "survival claims based on asbestos exposure are governed by the [state] law in effect when the exposure occurred." (first citing *Rando v. Anco Insulations, Inc.*, 16 So.3d 1065, 1072 (La. 2009), second citing (citing *Landry v. Avondale Indus., Inc.*, 877 So.2d 970, 972

---

[20]     R. Doc. 44 at 6.

(La. 2004)).  Further, the Fifth Circuit expressly stated that it did not decide whether defendant had a colorable federal preemption defense.  *Id.* at 466. As one Fifth Circuit panel cannot overrule another without an intervening change in the law, *see United States v. Darrington*, 351 F.3d 632, 634 (5th Cir. 2003), the Court does not find that the Fifth Circuit overruled its earlier, reasoned decision in *Castorina* by way of dicta in a footnote.

Because *Castorina*'s manifestation rule controls, the Court applies the LHWCA as it existed in 2019, when plaintiff's lung cancer manifested itself.

>    2.    *Applicability of the Post-1972 LHWCA to Plaintiff's Injuries*

Since the 1972 amendments, the LHWCA covers injuries of workers who meet the Act's "status" and "situs" requirements.  *See New Orleans Depot Servs. v. Dir., Office of Worker's Comp. Programs,* 718 F.3d 384, 389 (5th Cir. 2013).  The "status" requirement limits application of the LHWCA to "traditional maritime occupations."  *Id.*; *see* 33 U.S.C. § 902(3) (defining "employee" as "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and *any harbor-worker* including a ship repairman, *shipbuilder*, and ship-breaker" (emphasis added)).  The Fifth Circuit has found that the status test is satisfied when the person is "directly involved in an ongoing shipbuilding

operation." *Ingalls Shipbuilding Corp. v. Morgan*, 551 F.2d 61, 62 (5th Cir. 1977).

Defendants state that, as a "shipfitter" plaintiff was engaged in shipbuilding while employed by Avondale.[21]  Plaintiff agrees that he worked as a shipfitter,[22] but also presents evidence that he worked as a "tacker" and "laborer."[23]   Plaintiff's characterizations notwithstanding, there is no genuine dispute that plaintiff was a "harbor-worker." *See McLaurin v. Noble Drilling (US) Inc.*, 529 F.3d 285, 289 (5th Cir. 2008) (stating that the LHWCA applies to certain types of maritime workers, including "longshoremen, shipbuilders, ship repairers, and various harbor workers, such as carpenters, cleaners, or painters");  *see also* 1 Robert Force and Martin J. Norris, *The Law of Maritime Personal Injuries* § 3:9 (5th ed.) (Stating that the LHWCA specifically includes "'any harborworker,'" which includes "shipcleaners, tank cleaners, riggers, carpenters, ship ceilers, cargo checkers, cargo weighers, cargo talleyers, port watchmen, electricians, painters, mechanics, etc.")  All of Hulin's deposition testimony indicates that he worked as a "harbor-worker" when the exposures occurred.  For example,

---

[21]    R. Doc. 39-1 at 4.

[22]    R. Doc. 1 at 2-3, II ¶ 1 (Plaintiff's Statement of Contested Material Facts).

[23]    R. Doc. 44-2 at 1 (Hulin Affidavit).

Hulin stated that he worked as a "fitter" and "built a bunch of [destroyer escorts]."[24]  In the course of this work, he would "cut a hole [in the bulkhead of the destroyer escorts] to pass electric wire" and would sometimes be exposed to asbestos.[25]  He also described a time he did cleanup work on a hospital ship.[26]  *See McLaurin*, 529 F.3d at 289 (stating that "harbor workers" include "cleaners").  In the affidavit attached to plaintiff's response to defendant's motion for summary judgment, Hulin states that he "worked in the (land-based) insulation shop at Avondale's Main Yard," and his work there "included but was not limited to cutting asbestos insulation templates for later installation on vessels."[27]  This type of work satisfies the status test because it was an "essential step of the shipbuilding process."  *Morgan*, 551 F.2d at 62 (holding that a worker who died when a steel plate he was cleaning fell on him because the "cleaning task was an essential step of the shipbuilding process").  Although Hulin's affidavit indicates that he did other work in the insulation shop, he does not state what it was.  Plaintiff failed to produce any evidence creating a material fact issue as to whether Hulin was

---

[24]    R. Doc. 39-3 at 15-20 (Hulin Deposition Volume I).

[25]    *Id.* at 16.

[26]    *Id.* at 40.

[27]    R. Doc. 44-2 at 1, ¶ 5 (Hulin Affidavit).

anything but a "harbor-worker." 33 U.S.C. § 902(3). Thus, the Court finds that the LHWCA's status test is satisfied.

Second, the "situs" test, extended by Congress in 1972, requires that the injury occur on the "navigable waters of the United States" and "any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel." 33 U.S.C. § 903(a); *see also Sun Ship, Inc.*, 447 U.S. at 719 ("In 1972, Congress . . . extend[ed] the LHWCA landward beyond the shoreline of the navigable waters of the United States."). There is no dispute that plaintiff's exposure to asbestos occurred in a covered situs—Avondale Shipyards.[28] *See Pitre v. Huntington Ingalls, Inc.*, No. 17-7029, 2018 WL 2010026, at *3 (E.D. La. Apr. 30, 2018) ("Avondale's vessel construction and repair activities occurred on the west bank of the Mississippi River adjacent to navigable waters."). As discussed above, plaintiff disputes the applicable version of the law—not whether the locations are covered under the post-1972 LHWCA.[29] The Court finds that Avondale shipyards, located on and adjacent to the navigable waters of the

---

[28]   R. Doc. 39-5 at 2, ¶ 6 (Bossier Affidavit).

[29]   R. Doc. 44 at 6.

United States, is a covered situs.[30]  *See id.*  Plaintiff's status falls within the coverage of the LHWCA, and his injuries occurred on a covered situs. Therefore, plaintiff could have brought a claim under the LHWCA.  The Court proceeds to answer the question of whether the Act preempts plaintiff's state law negligence claims.

### B.   LHWCA Preemption

Defendants argue that the LHWCA immunizes it from tort liability and that it preempts the Louisiana law under which plaintiff brings his tort claims.[31]  The question here is whether the LHWCA's exclusivity provision has preemptive effect over state law tort claims.   The exclusivity provision states as follows:

> The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death . . . .

33 U.S.C. § 905(a).

---

[30]    *See* R. Doc. 39-5 at 2, ¶ 6 (Bossier Affidavit) ("Avondale was at all times an employer whose employees were employed in maritime employment upon the navigable waters of the United States of America, and their adjacent banks specifically, on the west bank of the Mississippi River in Avondale, Louisiana.").

[31]    R. Doc. 39-1 at 5-13.

The United States Supreme Court has delineated a "twilight zone" of concurrent jurisdiction between the LHWCA and state law workmen's compensation statutes. *See Davis v. Department of Labor and Indus. of Washington*, 317 U.S. 249 (1942) (establishing regime of concurrent jurisdiction in "twilight zone"); *see also Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 363-64 (5th Cir. 1995) (discussing cases). After the 1972 amendments to the LHWCA, the Supreme Court, in *Sun Ship, Inc.*, addressed the issue of whether the 1972 extension of the LHWCA's coverage displaced states from applying their own workmen's compensation schemes to land-based injuries that fell under expanded federal coverage. 447 U.S. 715. The Supreme Court unanimously answered the question in the negative. The Supreme Court specifically rejected the argument that concurrent jurisdiction was inappropriate because "concurrent jurisdiction could result in more favorable awards for workers' injuries than under an exclusively federal compensation system." *Id.* at 724. The Court found that the exclusive remedy provision of § 905(a) of the LHWCA was no obstacle to concurrent state compensation remedies.

This case is a twilight zone case because the relevant asbestos exposure occurred on land at the Avondale Shipyards where vessels were being constructed. *Cf. Cobb v. Sipco Servs. & Marine, Inc.*, No. 95-2131, 1997 WL

159491, at *6 (E.D. La. Mar. 27, 1997).  Indeed, plaintiff asks the Court to consider only this land-based exposure, even though exposure also occurred over navigable waters.[32]  Based on *Sun Ship*, it is apparent that Louisiana could have provided a workmen's compensation remedy to Hulin and that the LHWCA would not preempt such a recovery.  447 U.S. at 725-26.  But, plaintiff does not seek compensation under Louisiana's workers' compensation regime.  Rather, he asserts only state law negligence claims against the Avondale interests.[33]  Thus, the question is whether the LHWCA preempts state law negligence claims for injuries in the twilight zone.

Federal law applies to questions of preemption.  *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 363 (5th Cir. 1995).  Federal law can preempt state law in three ways: (1) express preemption, where Congress expresses an explicit intent to preempt state law; (2) field preemption, where the "sheer comprehensiveness" of the federal scheme implies congressional intent to preempt state regulation in the area; or (3) conflict preemption, where the state law either directly conflicts with the federal law or interferes with the regulatory program established by Congress.  *Id.*

---

[32]   R. Doc. 44 at 3.
[33]   R. Doc. 1-2 at 11, ¶¶ 38-50 (Original Complaint).

The text of the LHWCA, the intention underlying the statute, and the weight of authority make clear that plaintiff's state law tort claims are conflict preempted.  The LHWCA's exclusivity provision provides that the liability imposed in § 904 is "in place" of the right to "recover damages" at law.  33 U.S.C. § 905(a).  The plain language of this provision "evidences an unmistakable intention to embody the *quid pro quo* that defines most workmen's compensation statute." *Cobb*, 1997 WL 159491, at *7 (citing *Peter v. Hess Oil Virgin Islands Corp.*, 903 F.2d 935, 950 (3d Cir. 1990)). Specifically, the employee gets the benefit of no-fault compensation, and the employer enjoys immunity from tort liability for damages.  *Id.*  The Supreme Court has also recognized this exchange:

> [T]he [LHWCA is] not a simple remedial statute intended for the benefit of the workers.  Rather, it was designed to strike a balance between the concerns of the longshoremen and harbor workers on the one hand, and their employers on the other. Employers relinquish their defenses to tort actions in exchange for limited and predictable liability. Employees accepted the limited recovery because they receive prompt relief without the expense, uncertainty, and delay that tort actions entail.

*Morrison-Knudsen Constr. Co. v. Director, OWCP*, 461 U.S. 624, 636 (1983). Allowing state law tort claims would contradict the text of the statute and would frustrate the Act's purpose by undermining the *quid pro quo*.

Indeed, several Courts have recognized as much.  The Fifth Circuit held in *Rosetti v. Avondale Shipyards, Inc.*, 821 F.2d 1083, 1085 (5th Cir. 1987),

that the LHWCA bars a "state law negligence claim," because "[u]nder the LHWCA, workers compensation is the exclusive remedy for an injured employee against his employer."  Further, in *Hetzel v. Bethlehem Steel Corp*, 50 F.3d 360, 366-67 (5th Cir. 1995), the Fifth Circuit found that "[p]reemption of [a] state [tort] act is required to avoid frustration of the policies and purpose behind the LHWCA."  In *Hetzel*, the court reasoned that "[c]ongressional policy would be frustrated if an injured worker were allowed to collect benefits under the Act, and then sue his employer under a state statutory tort theory."  *Id.*  This Court has also held that the LHWCA preempts a state tort claim.  *See Cobb*, 1997 WL 159491, at *8 ([A]pplication of Louisiana tort law, which plaintiff concedes is not a workmen's compensation remedy, does not further the availability of no fault compensation, and it obstructs the purposes of the LHWCA.").  The Third Circuit in *Peter v. Hess Oil Virgin Islands Corp*., similarly concluded that "§ 905(a) [of the LHWCA] and the Supremacy Clause bar the Virgin Islands from imposing negligence liability on [a covered employer.]"  903 F.2d at 953.  The *Peter* court specifically noted that Congress "intended that compensation, not tort damages, were to be the primary source of relief for workplace injuries for longshoremen against their employers."  *Id*. at 952.

Against this binding and persuasive authority, plaintiff argues that his case is distinguishable because, unlike the plaintiffs in *Rosetti*, *Hetzel*, *Cobb*, and *Peter*, he (1) is not simultaneously seeking benefits under the LHWCA, or (2) has not already received LHWCA benefits.[34] But plaintiff's distinctions are unavailing. The Fifth Circuit has made clear that, if the LHWCA covers an employee's injury, his only remedy lies in workers' compensation. Any other result would conflict with LHWCA's text and undermine the *quid pro quo* that Congress enacted. For these reasons, the Court finds that the LHWCA preempts plaintiff's state law negligence claims.

## C.   Due Process and Divestment of Tort Claim

Finally, plaintiff argues that applying the LHWCA retroactively to an injury arising from land-based exposures occurring before the 1972 amendments unconstitutionally divests him of a property right in his accrued state law negligence claims.[35] He contends that such result amounts to a denial of due process.[36]

### 1.   Retroactivity of the LHWCA

Although "Congress has the power to enact laws with retrospective effect," in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), the Supreme

---

[34]   R. Doc. 44 at 21-23

[35]   *Id.* at 16-17.

[36]   R. Doc. 44 at 16-17.

Court recognized a presumption against retroactivity and delineated a test to assess whether a statute is retroactive. *Terrazaz-Hernandez v. Barr*, 924 F.3d 768, 772 (5th Cir. 2019). As the test is construed by the Fifth Circuit, the Court must first "determine whether Congress has expressly prescribed the statute's proper reach." *Id.* (quoting *Landgraf*, 511 U.S. at 28). If Congress clearly intended the statute to be retroactive, the inquiry ends. *Id.* If not, the Court must proceed to the second step and ask, "whether retroactive application would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* (quotation marks and citation omitted).

Here, the Court finds that Congress expressly prescribed that the amended statute applies to latent disease claims arising from exposures occurring before the amendment dates. In the 1984 amendments to the Act, Congress stated that the amendments "shall be effective on the date of enactment," *i.e.*, September 28, 1984, and "shall apply . . . with respect to claims filed after" that date. Pub.L. No. 98-426, § 28(a), 98 Stat. 1639, 1655. One of the changes to the statute was the express adoption of the manifestation rule. *See id.* at § 28(g)(1) ("[I]n the case of an occupational disease . . . an injury shall be deemed to arise on the date on which the

employee or claimant becomes aware . . . of the disease. . . .").  Together, these provisions indicate that the manifestation rule applies to claims filed after September 28, 1984, regardless of whether the exposures occurred before the amendment date.  Because the date of injury controls which version of the LHWCA applies, *see Castorina*, 758 F.2d at 1029, this is an express recognition by Congress that the LHWCA, as amended in 1984, would apply to claims arising from exposures, like plaintiff's, that occurred before the amendments.

The Eleventh Circuit reasoned similarly in *Alabama Dry Dock and Shipping Corp. v. Sowell*, when it concluded that the LHWCA's statute of limitations, as amended in 1984, was retroactive.   933 F.2d 1561 (11th Cir. 1991), *overruled on other grounds*, *Bath Iron Works Corp. v. Director, Office of Workers' Comp. Programs*, 506 U.S. 153 (1993).  The Eleventh Circuit, discussing the 1984 amendments to the LHWCA, stated:

> The provision that "the amendments made by this Act shall be effective on the date of enactment of this Act and shall apply . . . to claims *filed* after such date" is obviously not necessary to apply the new law to claims *arising* after the effective date. The only sensible reading of the provision, then, is that Congress was addressing claims that arose *before* the effective date of the statute but were filed *after* the effective date.

*Id.* at 1564.  The same logic applies here.  Congress would have no reason to prescribe that the manifestation rule applies to claims "filed" after the

amendment date if all it meant was that claims "arising" after the amendment date should apply the manifestation rule.

      2.    *Due Process*

The Court next addresses plaintiff's argument that divestment of his tort claims violates due process.  Although plaintiff cites to Louisiana Supreme Court precedent,[37] this issue is governed by federal constitutional law.  *Hetzel*, 50 F.3d at 363 ("The Erie doctrine does not apply . . . in matters governed by the federal Constitution or by acts of Congress.") (quoting *Grantham v. Avondale Indus., Inc.* 964 F.2d 471, 473-74 (5th Cir. 1992)).

The Court notes that the federal courts have generally found that rights in tort claims do not vest until there is a final, unreviewable judgment.  *See Hammond v. United States*, 786 F.2d 8, 12 (1st Cir. 1986); *In re TMI*, 89 F.3d 1106, 1113 (3d Cir. 1996); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 335 (4th Cir. 1997); *Lunsford v. Price*, 885 F.2d 236, 241 n.13 (5th Cir. 1989); *Arbour v. Jenkins*, 903 F.2d 416, 420 (6th Cir. 1990); *Symens v. SmithKline Beecham Corp.*, 152 F.3d 1050, 1056 n.3 (8th Cir. 1998); *Grimesy v. Huff*, 876 F.2d 738, 744 (9th Cir. 1989); *Salmon v. Schwarz*, 948 F.2d 1131, 1143 (10th Cir. 1991); *Sowell v. American Cyanamid Co.*, 888 F.2d 802, 805 (11th

---

[37]    R. Doc. 44 at 16.

Cir. 1989). But, even if there is a vested tort claim here, Hulin has not satisfied the constitutional standard to establish a due process violation.

The U.S. Supreme Court has held that Congress's acts—even retroactive legislation—enjoy a "presumption of constitutionality." *See Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15 (1976); *see also Landgraf*, 511 U.S. at 272 ("[T]he constitutional impediments to retroactive civil legislation are now modest."). In *Turner Elkhorn Mining*, the Supreme Court held that the Due Process Clause did not bar Congress from enacting a workers' compensation law that retroactively imposed liability on coal mine operators. 428 U.S. at 19-20. The test the Supreme Court applied was whether the party complaining of the due process violation carried its burden of showing that Congress "acted in an arbitrary and irrational way." *Id.* at 15-18. Ultimately, the Court found that imposing liability on employers for "disabilities bred in the past" is a "rational measure" to spread the costs of the disabilities. *Id.* at 18

Similarly, at least three circuit courts have applied a "rational basis" test to evaluate the constitutionality of retroactive legislation abolishing or affecting tort actions. *See Hammond*, 786 F.2d at 13; *In re TMI*, 89 F.3d at 1113; *In re Consolidated U.S. Atmospheric Testing Litig.*, 820 F.2d 982, 990-91 (9th Cir. 1987). In *Hammond* the First Circuit held that Congress was

"neither arbitrary nor irrational" when it enacted 42 U.S.C. § 2212, which retroactively barred the plaintiff's accrued common law and state statutory causes of action.  786 F.2d at 13-15 ("[P]laintiff has not met her burden of showing that § 2212 is wholly arbitrary and irrational in purpose and effect, *i.e.*, not reasonably related to a legitimate congressional purpose.").  Section 2212 allowed the United States to substitute itself as party in suits arising from the atomic weapons testing program and made the Federal Tort Claims Act ("FTCA") the sole remedy.  *Id.* at 10.  In its rational basis review, the court first found that Congress had a legitimate end where it sought to protect private parties from suit.  *Id.* at 13-14.  Then, it found that Congress's chosen means—allowing substitution by the United States and making the FTCA the sole remedy—was rational because it placed all putative plaintiffs in the same position as any other party who sues the federal government in tort.  *Id.* at 14.  When faced with the same issue, the Ninth Circuit adopted the *Hammond* court's analysis.  *In re Consolidated U.S. Atmospheric Testing Litig.*, 820 F.2d 982, 990-92; *see also Ileto v. Glock, Inc.*, 565 F.3d, 1126, 1140-41 (9th Cir. 2009) (upholding retroactive application of the Protection of Lawful Commerce in Arms Act ("PLCAA"), which preempts tort claims against firearm manufacturers, because "Congress rationally could find that . . . interstate and foreign commerce of firearms would be affected" by the

PLCAA).  The Third Circuit in *In re TMI*, held that retroactive application of choice of law provisions in the Price-Anderson Amendments Act of 1988, which had the effect of barring the plaintiffs' pending state law personal injury claims, was "not arbitrary and irrational," because retroactive application of the act furthered Congress's goals of uniformity, equity, and efficiency in disposition of claims.  89 F.3d at 1113-15.

Under *Turner Elkhorn Mining* and the persuasive authority in the First, Third, and Ninth Circuits, the Court must ask whether plaintiff carried his burden of showing that Congress acted arbitrarily and irrationally by immunizing employers covered by the LHWCA from tort claims, even if those claims already accrued under state law.  Clearly, he has not.  Plaintiff makes conclusory statements that the law would "unconstitutionally divest" him of his "vested right" if the Court finds that the LHWCA preempts his state law tort claims and immunizes defendants from them.[38]  Without more, these conclusory statements do not show that Congress acted arbitrarily and irrationally.

Congress had a rational basis to retroactively expand the extent of the LHWCA's coverage of exposures to hazardous materials, like asbestos, that cause long-latency occupational diseases.  The ends of the LHWCA, enacting

---

[38]    R. Doc. 44 at 16-17.

the *quid pro quo* of workers' compensation remedies, are unquestionably legitimate. *See Turner Elkhorn Mining*, 428 U.S. at 15 (noting that Congress has the authority "to allocate the interlocking economic rights and duties of employers and employees upon workmen's compensation principles."); *cf. Hammond*, 768 F.2d at 13 (finding that Congress had a "rational" or "legitimate" reason when it relieved private contractors from liability for tort claims). Additionally, the Court cannot say that Congress's decision to retroactively apply the LHWCA to toxic exposures was an irrational or arbitrary way to achieve that purpose. *Cf. In re TMI*, 89 F.3d at 1113 (upholding retroactive application of a choice of law provision where it furthered the relevant act's goals of "uniformity, equity, and efficiency"). By enacting the manifestation rule, Congress ensured that workers like plaintiff fell under the protection of the LHWCA. Congress was not merely divesting plaintiff of his state law negligence claims, it was substituting a no-fault remedy for the uncertain liability of common law torts.

For these reasons, the Court finds that plaintiff has failed to carry his burden of establishing a due process violation. The Court must grant defendants' motion for summary judgment.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS the motion for summary judgment.  Plaintiff's state law claims against the Avondale Interests and the London Market Insurers are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this __14th__ day of October, 2020.

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE